KENDALL H. MACVEY (State Bar No. 57676)
kendall.macvey@bbklaw.com
GREGG W. KETTLES (State Bar No. 170640)
gregg.kettles@bbklaw.com
WENDY Y. WANG (State Bar No. 228923)
wendy.wang@bbklaw.com
BEST BEST & KRIEGER LLP
P.O. Box 1028
Riverside, CA 92502
(951) 686-1450

KENNETH S. REINKER (pro hac vice pending)
CLEARY GOTTLIEB STEEN & HAMILTON LLP
kreinker@cgsh.com
2112 Pennsylvania Ave., NW
Washington, D.C. 20037
(202) 974-1500

Attorneys for Plaintiff,
NETAFIM IRRIGATION, INC.

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

## FRESNO DIVISION

| | |
|---|---|
| NETAFIM IRRIGATION, INC., | Case No.: |
| Plaintiff, | **COMPLAINT OF NETAFIM IRRIGATION, INC.** |
| -against- | |
| JAIN IRRIGATION, INC., JAIN DISTRIBUTION HOLDINGS, INC., IRRIGATION DESIGN & CONSTRUCTION, LLC, and AGRI-VALLEY IRRIGATION, LLC, | **DEMAND FOR JURY TRIAL** |
| Defendants. | |

Plaintiff NETAFIM IRRIGATION, INC., respectfully alleges as follows:

- 1 -

[AM_ACTIVE 402920269_30]

**INTRODUCTION**

1.     Plaintiff Netafim manufactures micro-irrigation equipment and relies on local design firms that design and install micro-irrigation systems to sell products to growers within local markets in Central California.  This antitrust case challenges the anticompetitive acquisition by Jain Irrigation ("Jain"), Netafim's largest competitor in micro-irrigation equipment, of Irrigation Design & Construction ("IDC") and Agri-Valley Irrigation ("AVI"), which Jain admits were the two largest design firms in Central California.  The acquisition denied Netafim access to IDC and AVI, which were critical channels to reach growers in many local areas.  Specifically, pre-acquisition, IDC and AVI accounted for 96% of Netafim's sales in Solano County, 67% in Merced County, and 52% in Stanislaus County.  Netafim's sales in these counties declined significantly as a result of the transaction.  IDC and AVI also accounted for virtually all of Netafim's sales in about a dozen zip codes surrounding their stores.  Pre-transaction, Netafim made nearly $5 million in annual sales into these zip codes through IDC and AVI, while Netafim's aggregate sales in these zip codes since the acquisition have been less than $4,000.  By reducing the ability of Netafim and other micro-irrigation equipment suppliers to reach growers in local markets across Central California, the transaction reduced competition in the sale of micro-irrigation equipment in those local markets.  Netafim now seeks to recover the millions in damages it has suffered as a result and injunctive relief.

2.     Jain, IDC, and AVI are also engaged in a campaign of false advertising against Netafim's micro-irrigation equipment.  They have falsely told potential customers that Netafim's products are inferior because they use recycled materials and additives.  Jain also falsely claims that its own products are "100% virgin plastic" and that Netafim will not fulfill its warranty obligations.  Netafim seeks to stop these false statements and to recover damages caused by them.

- 2 -

# THE PARTIES

3.     Plaintiff Netafim Irrigation, Inc. is a New York corporation with its principal place of business at 5470 E. Home Avenue, Fresno, CA 93727.  Netafim manufactures micro-irrigation equipment.

4.     Defendant Jain Irrigation, Inc. is a Delaware corporation with its principal place of business at 2851 East Florence Avenue, Fresno, CA 93721.  Jain Irrigation, Inc. manufactures micro-irrigation equipment.  Jain is a wholly owned subsidiary of Jain Irrigation Limited, an Indian multi-national conglomerate.

5.     Defendant Jain Distribution Holdings, Inc. is a Delaware corporation with its principal place of business at 2851 East Florence Avenue, Fresno, CA 93721.  Jain Distribution was formed in 2017 as the holding company for Defendants IDC and AVI.  Jain Distribution is a wholly owned subsidiary of Jain Irrigation Limited and a sister company of Defendant Jain Irrigation, Inc.

6.     Defendant Irrigation Design & Construction, LLC, is a Delaware limited liability company with its principal place of business at 11220 Hwy 33, Patterson, CA 95363 and the successor in interest to Irrigation Design & Construction, Inc., a California corporation with its principal place of business at 11220 Hwy 33, Paterson, CA 95363.  IDC LLC and IDC Inc. are collectively referred to in this Complaint as "IDC."  IDC is a micro-irrigation design firm in Central California.  Defendant Jain Distribution acquired an 80% interest in IDC on May 16, 2017.

7.     Defendant Agri-Valley Irrigation, LLC, is a Delaware limited liability company with its principal place of business at 3168 W. Belmont Avenue, Fresno CA 93732 and the successor in interest to Agri-Valley Irrigation, Inc., a California corporation with its principal place of business at 3168 W. Belmont Avenue, Fresno CA 93732.  AVI LLC and AVI Inc. are collectively referred to in this Complaint as "AVI."  AVI is a micro-irrigation design firm in Central California.  Defendant Jain Distribution acquired an 80% interest in AVI on May 16, 2017.

**JURISDICTION OF THE COURT**

8. This case is an antitrust and unfair competition case seeking damages, injunctive, and other relief to remedy harm to Netafim from (1) Defendants' anticompetitive agreements and anticompetitive acquisition in violation of Sherman Act, 15 U.S.C. § 1 and Clayton Act, 15 U.S.C. §§ 1, 18, and 26, and (2) Defendants' unfair competition and false advertising under the Lanham Act, 15 U.S.C. § 1125(a)(1)(B).

9. The Court has subject matter jurisdiction under 15 U.S.C. §§ 4, 26 & 1121(a) and under 28 U.S.C. §§ 1331, 1337, 1338(b) & 1355 because the claims arise under the federal antitrust and unfair competition laws.

10. This Court has personal jurisdiction over Defendants because Defendants' principal places of business are in California and this action is based on Defendants' unlawful conduct in California.

11. Venue is proper under 15 U.S.C. § 22 and 28 U.S.C. § 1391(b) and (c) because a substantial part of the events giving rise to these claims occurred in this District and Defendants are subject to personal jurisdiction in this District.

**INTERSTATE COMMERCE**

12. Micro-irrigation equipment is sold in interstate commerce. Both Jain and Netafim are global companies that operate manufacturing plants worldwide and ship micro-irrigation products into California from outside the state.

13. The agricultural production of Central California is a vital part of interstate commerce. Growers in Central California use micro-irrigation equipment to produce food that gets shipped nationwide.

- 4 -

# FACTUAL ALLEGATIONS

## A.   Central California's Micro-Irrigation Industry

14.   Central California is a thriving agricultural region despite being naturally arid.  Due to the scarcity and cost of water, growers in Central California depend on micro-irrigation.  Thanks to micro-irrigation technology, the Central Valley supplies 25% of the country's food and 8% of its total agricultural output despite occupying less than 1% of America's farmland.  The Salinas Valley supplies the majority of the country's lettuces and celery, nearly half of its broccoli, and about a third of its spinach, cauliflower, and strawberries.

15.   Micro-irrigation is more cost-effective and sustainable than other forms of irrigation because it delivers water and nutrients directly to the root systems of crops.  Micro-irrigation results in significantly less waste water from runoff, evaporation, and seepage than other technologies.  Micro-irrigation can increase crop yields up to 230% versus other irrigation methods, while using up to 70% less water.  That is particularly important in Central California where water is scarce.

16.   The micro-irrigation industry consists of three levels: (1) manufacturers that produce equipment for micro-irrigation systems; (2) local design firms that work with growers to customize, install, and maintain micro-irrigation systems; and (3) growers that purchase and use micro-irrigation systems on their farms.

17.   Equipment manufacturers depend on local design firms to sell products to growers as part of a complete irrigation system.  These local design firms provide the critical services of designing a micro-irrigation system that meets the needs of a grower's field, installing the system, and maintaining it.

18.   In a competitive market, these local design firms compete to win growers' business based on the price, quality, and array of equipment they offer.  Design firms have historically worked with multiple manufactures of micro-irrigation equipment in order to offer growers the most suitable products at the best prices, thereby fostering competition between manufacturers.

- 5 -

19.   Equipment manufacturers work closely with design firms. Manufacturers invest time and money in their relationships with design firms so that, among other things, the design firms are knowledgeable about the manufacturers' product lines and prices.  Manufacturers also often provide design firms with non-public pricing and individualized quotes for projects.

**B.     Pre-Acquisition, Netafim Relied on IDC and AVI to Reach Growers**

20.   Plaintiff Netafim is a micro-irrigation equipment manufacturer.  Netafim had about $65 million in sales in Central California in 2016, the year before Jain acquired IDC and AVI.  About $9 million was through IDC and AVI.  Netafim believes that it was the largest seller of micro-irrigation equipment in the region.

21.   Defendant Jain is one of the world's largest manufacturers of micro-irrigation equipment.  In 2016 Jain had annual sales of about $25 million in Central California.  Jain was Netafim's largest competitor in the region.

22.   Pre-acquisition, by Jain's own admissions, Defendants IDC and AVI were the two largest design firms in Central California.  Jain's statements about the acquisition repeatedly emphasized the size and importance of IDC and AVI, as described in detail in Section C.  According to Jain's press releases, AVI and IDC had combined revenues of $113 million in 2016.[1]

23.   IDC and AVI were critical channels for Netafim to reach growers in a number of local areas in Central California.

24.   Table 1 reports Netafim's percentage of 2016 sales through IDC and AVI in those counties where IDC's and AVI's share exceeded 50%.  In Solano County, IDC had a 96% share, in Merced County, IDC and AVI had a combined 67% share, and in Stanislaus County, IDC had a 52% share, demonstrating the

---

[1]Press Release, Jain, "Jain Irrigation Announces Investment in United States' Largest Micro Irrigation Dealers – AVI & IDC" (April 19, 2017), http://www.jains.com/Company/news/JAIN_IRRIGATION_ANNOUNCES_ INVESTMENT_IN_UNITED_STATES_LARGEST_MICRO%20IRRIGATION%20DEALERS_AVI__IDC.htm.

control that they had over access to growers across each of those counties.  Table 1 also lists IDC and AVI store locations in these counties.

**Table 1: County-Level Netafim Sales Through IDC and AVI for 2016**

| County | IDC | AVI | Combined | Stores & Addresses |
|---|---|---|---|---|
| Merced | 60% | 7% | 67% | IDC:<br>16490 Indiana Ave.<br>Dos Palos, CA 93620<br><br>AVI:<br>522 South Highway 59<br>Merced, CA 95341 |
| Solano | 96% | - | 96% | IDC:<br>630 N 1st St.<br>Dixon, CA 95620 |
| Stanislaus | 52% | - | 52% | IDC:<br>11220 Highway 33<br>Patterson, CA 95363<br><br>IDC:<br>808 Merced St.<br>Newman, CA 95360 |

25.   Table 2 reports Netafim's percentage of sales through IDC and AVI in zip codes where their 2016 or 2017 share exceeded 50%.[2]  In most of these zip codes, IDC and AVI accounted for 90-100% of Netafim's sales.  In each of these zip codes, IDC and AVI have a store serving local customers.  These shares thus reflect the dominance and control over access to growers that IDC and AVI had in the local areas around their stores, again illustrating the control that they had over access to growers in those areas.

---

[2] The 2017 figures represent IDC and AVI's share of Netafim's full year sales in those zip codes.  But Netafim sold through IDC and AVI only in the first quarter of 2017, since Jain announced the acquisition in April 2017.  Thus, when IDC or AVI have a 100% share in 2017, that means Netafim made sales through IDC or AVI in the early part of 2017 and then was not able to make sales through any other channel for the rest of the year.

**Table 2: Zip-Code Level Netafim Sales Through IDC and AVI for 2016**

| Zip Code | County | IDC | AVI | Store & Address |
|---|---|---|---|---|
| 93292 | Tulare | - | 40% in 2016 100% in 2017 | AVI: 30467 Rd 158 Visalia, CA 93292 |
| 93620 | Merced | 99.8% in 2016 87% in 2017 | | IDC: 16490 Indiana Ave. Dos Palos, CA 93620 |
| 93622 | Fresno | - | 44% in 2016 64% in 2017 | AVI: 1972 N St. Firebaugh, CA 93622 |
| 93624 | Fresno | - | 100% in 2016 100% in 2017 | AVI: 21067 Lassen Ave. Five Points, CA 93624 |
| 93722 | Fresno | - | 100% in 2016 100% in 2017 | AVI: 3168 W Belmont Ave. Fresno, CA 93722 |
| 95012 | Monterey | 91% in 2016, 100% in 2017 | - | IDC: 11455 Wood St., #8 Castroville, CA 95012 |
| 95206 | San Joaquin | 100% in 2016 100% in 2017 | - | IDC: 1245 W. Charter Way Stockton, CA 95206 |
| 95236 | San Joaquin | 100% in 2016 100% in 2017 | - | IDC: 13671 E. Highway 26 Linden, CA 95236 |
| 95341 | Merced | - | 100% in 2016 100% in 2017 | AVI: 522 South Highway 59 Merced, CA 95341 |
| 95360 | Stanislaus | 100% in 2016 100% in 2017 | - | IDC: 808 Merced St. Newman, CA 95360 |
| 95363 | Stanislaus | 100% in 2016 100% in 2017 | - | IDC: 11220 Highway 33 Patterson, CA 95363 |
| 95620 | Solano | 96% in 2016 47% in 2017 | - | IDC: 630 North 1st St. Dixon, CA 95620 |

26. Netafim also sold through IDC and AVI in other counties and zip codes, although the anticompetitive effects from the Jain transaction are most significant in the particular local geographic markets where IDC and AVI were dominant.

- 8 -

27.  IDC was Netafim's largest dealer in Central California overall.  In 2016, IDC accounted for $7.3 million of Netafim's sales.  Netafim had also worked collaboratively with IDC to meet growers' needs and demands since IDC was founded in 2004.  For example:

- In or around 2003, Todd Rinkenberger, Netafim's then Director of Sales for the Western Region for Agriculture and Strategic Projects, advised IDC's co-founder, Michael Conrad, on the creation of IDC.  Netafim had worked with Mr. Conrad for over a decade prior while he was at another design firm.

- Netafim and IDC worked together on product development, including evaluating new development opportunities, finding locations to test new technologies and methods, and sometimes sharing the costs of development.

- Netafim and IDC collaborated in 2006 to develop micro-irrigation techniques for tomatoes used in canning and sauces.

- Shortly before the acquisition, Netafim was working with IDC to pilot a system that repurposed dairy wastewater as fertilizer.  After the acquisition, Netafim had to destroy the plans that it had developed with IDC.

- Netafim also worked personally with IDC's executives to test new products. For example, Netafim and IDC tested a drip tape by installing it on a field owned by an IDC co-founder.  They also tested a product to deter rodent damage to drip tape at the farm of an IDC executive's father.

- Netafim referred potential employees to IDC.

28.  In 2016, AVI accounted for $1.2 million of Netafim's sales.  Netafim had started making substantial efforts to build its relationship with AVI pre-acquisition, and if the acquisition had not happened, Netafim expected to further increase its sales through AVI in 2017 and beyond.

- 9 -

**C.   Jain's Acquisition of IDC and AVI Deprives Netafim of a Critical Channel to Reach Growers and Causes Netafim to Lose Millions in Sales**

29.   On April 18, 2017, Jain announced that it would acquire 80% of AVI and IDC.  On May 17, 2017, Jain announced completion of the transaction.

30.   Jain repeatedly emphasized the size and importance of IDC and AVI in its announcements about the transaction.  Its April 2017 press release was titled "JAIN IRRIGATION ANNOUNCES INVESTMENT IN UNITED STATES' LARGEST MICRO IRRIGATION DEALERS – AVI & IDC."[3]  Jain stated that the transaction was a "[c]onsolidation of [the] 2 largest dealers in California."  Jain further stated that IDC and AVI together would be "one of the largest companies in [the] [i]rrigation business in the USA"[4]  and "an un-paralleled leader in design, construction, service, and innovative [agricultural] [t]echnology."[5]  Jain's May 2017 press release likewise emphasized that IDC and AVI were "two of the United States' largest micro-irrigation dealers."[6]

31.   Following the announcement of the acquisition, Netafim could no longer work with IDC and AVI and terminated its relationships with them.

32.   One reason that Netafim ended its relationship with IDC and AVI was that Jain would make IDC and AVI favor Jain's products over competing equipment from Netafim and other manufacturers.  Jain's press release explained the transaction was a "[m]ajor push to deploy [Jain's] leading Agriculture Technology portfolio" and that the transaction would allow Jain to "build direct relationships with growers" through IDC and AVI.

---

[3] *Id.*
[4] Press Release, Jain, "Jain Irrigation Announces Investment in United States' Largest Micro Irrigation Dealers – AVI & IDC" (April 19, 2017), http://www.jains.com/Company/news/JAIN_IRRIGATION_ANNOUNCES_ INVESTMENT_IN_UNITED_STATES_LARGEST_MICRO%20IRRIGATION%20DEALERS_AVI__IDC.htm.
[5] Press Release, Jain, "Jain Irrigation Announces Investment in United States' Largest Micro Irrigation Dealers – AVI & IDC" (April 19, 2017), http://www.jains.com/Company/news/JAIN_IRRIGATION_ANNOUNCES_ INVESTMENT_IN_UNITED_STATES_LARGEST_MICRO%20IRRIGATION%20DEALERS_AVI__IDC.htm.
[6] Press Release, Jain, "Jain Irrigation Announces Completion of Investment in United States Two of The Largest Micro Irrigation Dealers – AVI & IDC" (May 17, 2017), https://jainsusa.com/news/merger-completion/.

- 10 -

33.   IDC and AVI favored Jain products post-acquisition.  For example, IDC encouraged a large cantaloupe grower to switch from Netafim to Jain and the grower later told Netafim "IDC flipped me to Jain."  Other growers have likewise told Netafim that IDC pressured them to switch their business to Jain.

34.   Another reason Netafim ended its relationship with IDC and AVI was that Netafim could not bid on projects through IDC and AVI without risking providing Jain with access to Netafim's competitively sensitive pricing and product information.  That would have given Jain an anticompetitive advantage.

35.   Netafim made nearly $9 million in 2016 sales to growers through IDC and AVI.  Netafim was unable to make similar sales post-acquisition.

36.   Although Netafim attempted to make up for the loss of IDC and AVI by using other design firms to reach growers, that was not reasonably possible given the control that IDC and AVI have over access to growers in a number of local markets.  The process of using other design firms to reach growers was also costly and time-intensive.  Netafim's sales declined in 2017 as a result of the acquisition.

37.   For example, in Merced County, IDC and AVI accounted for 67% of Netafim's sales in 2016.  Netafim's sales fell from over $5 million in 2016 before the acquisition to about $1.6 million in 2017.  Even in 2020,  Netafim's sales in Merced were only $3.9 million and thus remain well below what they were before Jain's anticompetitive acquisition.  Likewise, in Solano County and Stanislaus County, where AVI and IDC were 96% and 52% of Netafim's sales in 2016, Netafim's 2020 sales remain below 2016 levels.

38.   Netafim has also suffered massive sales declines in zip codes where IDC and AVI accounted for a large share of Netafim's sales.

- For example, in 2016, IDC had 100% of Netafim's sales in the 95206 (San Joaquin County), 95236 (San Joaquin County), 95360 (Stanislaus County), and 95363 (Stanislaus County) zip codes, and 91% of Netafim's sales in the 95012 (Monterey County) zip code.  Netafim made almost $4 million in

2016 sales through IDC alone in these zip codes.  Since the acquisition, from 2018 to 2020, Netafim has made less than $322 in sales in these zip codes. IDC has a store in each of these zip codes (see Table 2).

- Similarly, in 2016, AVI had 100% of Netafim's sales in the 93624 and 93722 zip codes (both in Fresno County).  Netafim made almost $875,000 in sales in 2016 through AVI in these zip codes.  But since the acquisition, Netafim has made zero sales in these zip codes.  AVI has a store in each of these zip codes (see Table 2).

- As another example, Netafim made almost $90,000 in sales through AVI in the 93292 zip code (Tulare County) in 2016 and early 2017.  Since the acquisition, Netafim has made just over $3,000 in sales in this zip code.  AVI has a store in 93292 (see Table 2).

**D.     Defendants Engage In a Misinformation Campaign Against Netafim**

39.   Defendants have also made false statements about Netafim's micro-irrigation tubing and Netafim's warranties in a misinformation campaign against Netafim.  After the acquisition, Netafim began receiving customer reports that Defendants were falsely claiming that Netafim products were inferior because they contain recycled materials and additives.  Jain has also made similar false claims on its website about the reliability and safety of products made of recycled materials and additives.  Jain also falsely asserted on its website that Jain's own equipment is "100% virgin plastic" when in fact Jain uses additives in its products like all manufacturers of micro-irrigation equipment do.  Jain has also falsely claimed that Netafim would not honor its warranty agreements or fulfill warranty claims.

*i.  Statements by Defendants' Employees*

40.   Soon after the acquisition, a Netafim manager learned from one of AVI's salespeople that Jain specifically trained IDC and AVI salespeople how to pitch against Netafim equipment.  This training included a sales handbook with

- 12 -

magnified photos purporting to be damaged Netafim equipment.  The salesperson explained that Defendants used these images to falsely represent to customers that Netafim's equipment is of inferior quality because it contains recycled materials.

41.   In June 2017, a grower from San Joaquin Valley reported to Netafim that Defendants' salespeople told him that "Netafim is primarily owned by venture capitalists and the investors have been concerned with their returns.  Other than changing the names of some products, there have not been recent new product advancements, or improvements in efficiency made by Netafim to stay competitive.  As a result, they have been utilizing foam fillers and recycled materials to manufacture their new drip tape and hose in order to reduce their resin cost and maintain margins."  All of these statements were false.

### ii.  Online Statements about Product Composition

42.   Jain operates a blog on its website to market Jain's products and services.  This blog sometimes compares Jain's products and services to those of competitors.  All of the blog posts described herein remain accessible to Netafim's potential customers on Jain's website today.  Particularly given that Jain and Netafim are the two largest micro-irrigation equipment suppliers in Central California and that the Defendants' salespeople actively make false statements to customers about Netafim's products, customers would understand the false statements on Jain's website to refer to Netafim.

43.   **The August 2020 Blog Post.**  On August 25, 2020, Defendants published a post called "Choosing the Right Emitterline," by Michael Derewenko, Jain's Marketing Manager.[7]  It asserts: "One of the major differences in the tubing is the quality of resin a manufacturer uses to make the tubing and emitter line…. A couple of questions to ask of your local distributor selling you the cheapest tubing

---

[7] Michael Derewenko, Choosing the Right Emitterline, JAIN USA (Aug. 25, 2020),
https://jainsusa.com/blog/choosing-the-right-emitterline/.

COMPLAINT OF NETAFIM IRRIGATION, INC.

possible: Were recycled resins used to make the tubing?  Were foaming agents or fillers used to make this tubing?"

44.   This post falsely suggests that micro-irrigation tubing and emitter lines made with recycled resins, foaming agents, or other additives are low quality.  In fact, recycled products, foaming agents, and other additives do not reduce quality and indeed can improve products by making them lighter, stronger, more durable, and more environmentally friendly.

45.   **The June 2017 Blog Post and Video.**  On June 13, 2017, Jain published a post called "Ultimate Guide: Irrigation Tubing for Drip Irrigation," by Aric Olson, President of Jain.[8]  AVI published a link to Jain's post on its own website the next day.[9]  The post includes the following false assertions:

- "To save money some manufacturers are adding foams, fillers and other additives to resin used to make irrigation tubing."
- "Unfortunately consumers pay for these cost cutting measures without any explanation about the compromise in material."
- "Many [competing manufacturers] no longer follow engineering standards developed to help growers ensure they have reliably performing products for years to come."
- "You can see the material voids (holes), resulting in a product that weighs less, and most likely will not have the same performance, and may be more susceptible to environmental stress cracking when used in combination with other fillers or recycled materials."
- "From research, recycled plastics will not have the same performance and long-term life as virgin resin systems designed for irrigation tubing.  For

---

[8] Aric Olson, Ultimate Guide: Irrigation Tubing for Drip Irrigation, JAIN USA (June 13, 2017), https://jainsusa.com/blog/tubing-drip-irrigation/.
[9] Aric Olson, Ultimate Guide: Irrigation Tubing for Drip Irrigation, AVI NEWS (June 14, 2017), https://agrivalley.com/news/ultimate-guide-irrigation-tubing-for-drip-irrigation/.

COMPLAINT OF NETAFIM IRRIGATION, INC.

further reference and study please visit this Dow webinar or read this article about down-cycling."

- "ASABE 435 Standards… Compromises such as wall thickness, recycled resins, and the addition of fillers, foams, or other additives, make tubing that cannot meet the standards for performance set out by the 435 standards."

- "There simply is not enough of a safety factor in operating pressure and long term operating and burst pressure performance as with tubing meeting the standard."

46.   The post also contains an embedded video, which makes false claims similar to the post itself.  AVI separately re-posted Jain's video on its own website on August 1, 2018.[10]  The video includes the following claims:

- "100% virgin plastic, Jain tubing comes with a 10-year warranty and conforms to ASABE standards."

- "While some manufacturers add foam, fillers, and additives to reduce their material usage, Jain manufactures tubing with a thicker wall that meets 435 advanced weather-performance standards."

47.   Each of the claims in the post and video is false.

48.   It is false that the purpose of additives is to increase profits or cut costs at the expense of quality.  Additives do not reduce product lifetime or performance.  In fact, they can make micro-irrigation equipment lighter, tougher, and resistant to UV light.  Growers benefit from these properties in micro-irrigation products.

49.   It is false that tubing that uses recycled materials or additives does not meet ASABE 435 standards.  Micro-irrigation tubing made with recycled materials, foaming agents, or other additives meets ASABE 435 standards.

50.   It is false that Jain's micro-irrigation tubes are made of "100% virgin plastic."  Jain's products include other materials.  Jain admits as much in other

---

[10] What Tubing is Right for You?, AVI CAMPAIGNS (Aug. 1, 2018), https://agrivalley.com/campaigns/what-tubing-is-right-for-you/.

postings on its own website.  In the same 2017 blog post, Jain states "[w]e utilize DOW fingerprint virgin resin *along with the best carbon black materials* run in the best extrusion equipment in the industry while following the ASABE 435 standard" (emphasis added).  In the August 2020 blog post, Jain states that "[a]n emitter line like Total CV from Jain is made with *95% pure virgin resin* with only a small percentage of UV additive to protect the tubing when exposed to harsh UV light" (emphasis added), contradicting its claim that Jain's products are 100% virgin plastic and admitting that additives have benefits such as UV protection.

### iii.  Online Statements about Warranties

51.   In early 2016, Netafim's then-majority shareholder, Permira LLP, announced it was looking to sell its stake in Netafim.  In February 2018, Permira completed the sale of its stake to Mexichem, S.A.B. de C.V.

52.   In reference to the then-pending change in ownership, Jain's 2017 blog post falsely insinuated Netafim would not honor its warranties:  "I would recommend asking, who is warrantying the product?  Will this company be in its current form and have the ability and willingness to honor the warranty or will you be dealing with a new owner in a business that has significantly changed."

53.   In fact, Netafim's ability and willingness to honor its product warranties was not then and is not now dependent on its ownership.

### E.    Prior Litigation Between Jain and Netafim

54.   This lawsuit is not the first one between Netafim and Jain.

55.   At the time of the acquisition, in 2017, IDC owed Netafim $1,927,796 for unpaid invoices.  IDC refused to pay, and Netafim made a formal demand for payment on July 12, 2017.  In an attempt to resolve that dispute without litigation, Netafim agreed to let IDC make five equal monthly payments starting on March 1,

- 16 -

2018.  But IDC stopped making these payments after June 2018, at which point IDC still owed Netafim $259,379.25.[11]

56.   In September 2018, Jain filed a federal antitrust complaint against Netafim in the Eastern District of California alleging that Netafim's termination of IDC and AVI was part of an anticompetitive conspiracy and that Netafim's press release announcing that termination furthered that conspiracy.  Netafim moved to dismiss on grounds including that the alleged conspiracy was implausible and that the termination was in Netafim's own self-interest.  Jain amended its complaint, and Netafim once again moved to dismiss.  The court granted Netafim's motion on May 14, 2019, and dismissed all of Jain's claims.  Instead of attempting to amend again, Jain voluntarily dismissed its claims.  Netafim never filed an answer to Jain's federal antitrust claims.

57.   At this point, Netafim again hoped that the dispute between Netafim and Jain could be resolved without further litigation.  However, on July 8, 2019, Jain filed a California state law antitrust action in San Diego Superior Court regurgitating the allegations from the federal complaint.  Netafim moved to strike the complaint based on California's anti-SLAPP law because Netafim's press release announcing the termination of its relationship with AVI and IDC was foundational to Jain's complaint.  The Superior Court of California denied Netafim's motion on August 30, 2019, and the California Court of Appeal affirmed on October 16, 2020.  The state action has since then entered discovery.

58.   On March 16, 2021, Netafim moved for leave to file counterclaims against Jain in state court alleging that Jain, Jain Distribution, IDC, and AVI entered into anticompetitive trusts in violation of California's Cartwright Act.  The state counterclaims do not challenge Jain's acquisition of IDC and AVI and do not challenge the misinformation campaign.  Moreover, the federal courts have

---

[11] IDC eventually paid the remaining amount on October 29, 2019, after Netafim initiated an arbitration proceeding against IDC and Mr. Conrad to recover the amounts owed.

exclusive jurisdiction over federal antitrust claims, and thus Netafim could not have brought the federal antitrust claims it is bringing now in state court.

## RELEVANT ANTITRUST MARKETS & MARKET SHARES

**A.     Product Market for Micro-Irrigation Equipment**

59.   Micro-irrigation equipment is a relevant antitrust market.  Micro-irrigation is not reasonably interchangeable with other forms of irrigation.  Only micro-irrigation delivers water to crops with the precision needed to maximize crop growth while minimizing water consumption.  Micro-irrigation requires specialized equipment that differs from the equipment used in other forms of irrigation.  For example, micro-irrigation uses specialized tubing going to the root of each plant and tree, in contrast to sprinklers used in spray irrigation and the furrows used in flood irrigation.  Micro-irrigation is also particularly well-suited for irrigating sloping or irregularly-shaped land areas not easily served by spray or flood irrigation.  Growers would not switch away from micro-irrigation to other forms of irrigation in response to a small increase in the price of micro-irrigation equipment because other forms of irrigation are less efficient at delivering water and nutrients to plants, result in water waste, and are unsuitable for use on some terrain.

**B.     Service Market for Micro-Irrigation Design Services**

60.   Micro-irrigation design services constitute a relevant antitrust market.  Micro-irrigation equipment is not sold in a prefabricated system.  Instead, each micro-irrigation system must be tailored to the particular grower and project.  This design requires expertise in micro-irrigation technology, the local climate and topography, and the water and fertilization requirements of the crops.  Design services for a micro-irrigation system are not reasonably interchangeable with the design of other irrigation systems because the equipment involved and expertise required is entirely different.  Growers would not substitute away from micro-

- 18 -

irrigation design services in response to a small increase in their price because growers require these services to use micro-irrigation systems.

## C.   Geographic Markets for Micro-Irrigation Design Services

61.   The relevant geographic markets for design services are the local geographic markets where growers demand design services and where design firms provide design services.  The local geographic markets where Netafim alleges that IDC and AVI had a dominant share are listed in Tables 1 and 2, above, and include Merced, Solano, and Stanislaus Counties, and the zip codes of 93292, 93620, 93622, 93624, 93722, 95012, 95206, 95236, 95341, 95360, 95363, and 95620.  IDC and AVI also operate in other local geographic markets.

62.   Growers demand local service.  Every micro-irrigation system must be tailored to the needs of a particular grower in a particular location for a particular field and crop.  A grower located in Merced County could not turn to a design firm in Solano County for this service because that design firm would not have a local office to provide services to the grower and would lack expertise with local field and crop factors that influence the design of micro-irrigation systems.

63.   Design firms also operate locally.  Design firms maintain local stores to serve growers in these local markets.  Each store serves growers located near the store.  Design firms have local employees and rely on local labor forces and local equipment to design and install systems in each area.

64.   IDC and AVI operations illustrate that the relevant geographic markets are local.  IDC has eight stores in Central California.  AVI has six stores.  The reason IDC and AVI maintain 14 locations between them is because design services are provided in local markets.  Likewise, IDC's and AVI's dominant market shares in the counties and zip codes where they have stores confirms that the markets are local.

65.   The local nature of the relevant geographic markets is also demonstrated by Netafim's sales.  As described above, before the merger, Netafim made nearly $5 million in sales through IDC and AVI in the 93292, 93624, 93722, 95012, 95206, 95236, 95360, and 95363 zip codes in 2016.  But in the years after the acquisition, Netafim has made less than $4,000 in total sales in these zip codes.  If the relevant markets were regional rather than local, Netafim would not have suffered this huge decline in the local areas where IDC and AVI operate.

**D.    Market Shares**

66.   Netafim and Jain are the two largest micro-irrigation equipment sellers in Central California.  While specific market shares are not available, the approximate size of the micro-irrigation equipment market in Central California at the time of the acquisition is estimated at about $225 million with Netafim's share estimated at about 37% and Jain's at about 11%.  The shares in any particular local area are likely to be similar to the shares in Central California overall.  The remainder of the micro-irrigation equipment market consists of smaller manufacturers, including Rivulus Irrigation, Inc., Rain Bird Corp., and Toro Co., which were also harmed by Jain's acquisition of IDC and AVI.

67.   IDC and AVI are the two largest design firms in Central California.  Their specific market shares vary across the individual local markets within Central California depending on where IDC and AVI have locations and grower relationships.  In particular, IDC and AVI provide nearly all micro-irrigation design services in the regions surrounding their locations.  Tables 1 and 2, above, summarize Netafim's share of sales through IDC and AVI in specific local markets.  These shares approximate IDC's and AVI's overall shares in these areas.

## ANTICOMPETITIVE EFFECTS AND IMPACT

68. Jain's acquisition of IDC and AVI was an illegal vertical merger between firms operating at different levels of the supply chain, as it combined a significant manufacturer with the two largest design service firms in Central California. The acquisition was also an illegal horizontal merger that combined the two largest design service firms in local areas within Central California.

### A. Vertical Merger of Jain with IDC and AVI

69. The vertical aspects of this merger combined Jain's large share of micro-irrigation equipment sales across Central California with IDC and AVI's large share in micro-irrigation design services in the relevant geographic markets. In every local geographic market listed in Tables 1 and 2, IDC and AVI had over a 50% share and in many instances had a 100% share in particular zip codes.

70. The U.S. antitrust agencies have Vertical Merger Guidelines that explain that mergers between firms at different levels of the supply chain can violate the antitrust laws in myriad ways. The Vertical Merger Guidelines explicitly state that "[r]aising rivals' costs of distribution" is a potential anticompetitive effect of vertical mergers.[12] The Vertical Merger Guidelines provide an example of how a merger between an equipment manufacturer and a "distributor [that] has developed a strong position in Region X" could "harm competition" in that region. The Vertical Merger Guidelines explain this merger could result in "higher retail prices for [the competing] products" and could "disadvantage [rival] manufacturers."

71. Here, the vertical aspects of this merger reduced competition for the sale of micro-irrigation equipment in each local market within Central California by eliminating IDC and AVI as channels through which Netafim and other manufacturers could compete to sell equipment to growers. Instead, IDC and AVI

---

[12] See DOJ/FTC, Vertical Merger Guidelines (June 20, 2020), available at https://www.ftc.gov/system/files/documents/reports/us-department-justice-federal-trade-commission-vertical-merger-guidelines/vertical_merger_guidelines_6-30-20.pdf.

favor Jain's products, even if competing manufacturers offer better pricing or quality.  As the Vertical Merger Guidelines explain, "rivals may refrain from doing business with the merged firm," reducing competition when the rivals "become less effective competitors if they must rely on less preferred trading partners."  The acquisition had precisely this effect on Netafim and Jain's other rivals.

72.  Growers are harmed by the vertical aspects of the merger because Netafim and other manufacturers can no longer compete to provide the best prices and products through IDC and AVI.

73.  Given the high shares of IDC and AVI in the relevant markets, growers cannot simply substitute away from IDC and AVI to another design firm.  In many local areas, IDC and AVI had dominant shares.  Even in areas where other design firms operate, substitution to another design firm would require the grower to forego using their preferred supplier and lead to costs and delays.  Moreover, growers with existing relationships with IDC or AVI or using them for ongoing projects cannot reasonably substitute to other design service firms.

74.  Equipment manufacturers such as Netafim were harmed by the vertical aspects of the merger because they could no longer use IDC and AVI to reach growers.  IDC and AVI were particularly efficient channels to reach growers, as demonstrated by their high market shares.  Among other reasons, IDC and AVI were effective channels to reach growers because of their expertise, long-term relationships, and history of collaboration with equipment manufacturers such as Netafim.  After the acquisition, Netafim and other manufacturers either were unable to reach IDC or AVI growers at all, or could only do so at additional cost.  Netafim and other manufacturers must invest significant time and effort to work with other design firms to try to win back business from IDC and AVI.

75.  In addition, the vertical aspects of this acquisition reduced competition by giving Jain access to competitively-sensitive information from other equipment manufacturers.  As the Vertical Merger Guidelines explain, one potential harm from

- 22 -

vertical mergers is that a merged firm will "use access to a rival's competitively sensitive information to moderate its competitive responses to its rival's competitive actions." Equipment manufacturers regularly share information about prices and products with design firms. Netafim shared information about prices and products with IDC and AVI before the acquisition. After the acquisition, Jain would have had access to that information and could have used it to harm growers and competing equipment manufacturers by changing its bidding behavior.

**B. Horizontal Merger of IDC and AVI**

76. The horizontal aspects of the merger combined the two largest design firms in Central California. In some local geographic markets, IDC and AVI competed head-to-head prior to the acquisition. For example, in Merced County, IDC had 60% share and AVI had a 7% share. The merger eliminated this competition. In other local geographic markets, as the two largest design firms in Central California, IDC and AVI were potential competitors that could have expanded into one another's territory and created more competition in the future.

77. Growers in the San Joaquin Valley were harmed because the horizontal aspects of the merger eliminated the competition in price, quality, and service between IDC and AVI. Growers were also harmed because, absent the merger, IDC and AVI could have expanded into one another's territory and increased competition for growers. The U.S. antitrust agencies have Horizontal Merger Guidelines explaining how mergers between actual competitors and potential competitors can harm customers.[13]

78. Netafim and other equipment manufacturers were also harmed by the horizontal aspects of the merger because the merger combined the two largest design firms in Central California and thus combined two key downstream buyers

---

[13] See DOJ & FTC, Horizontal Merger Guidelines (August 19, 2020), available at https://www.justice.gov/atr/horizontal-merger-guidelines-08192010.

of their products.  The Horizontal Merger Guidelines explain that the antitrust laws prohibit mergers that create buyer-side market power, much as they prohibit mergers that create seller-side market power, because  "[t]he exercise of market power by buyers ('monopsony power') has adverse effects comparable to those associated with the exercise of market power by sellers."

**FIRST CAUSE OF ACTION**

**Violation of the Sherman Act, Section 1, 15 U.S.C. § 1**

79.   Plaintiffs incorporate by reference the allegations in paragraphs 1-78.

80.   Section 1 of the Sherman Act prohibits unreasonable restraints of trade.

81.   The acquisition is an unreasonable restraint of trade.

82.   The acquisition had anticompetitive vertical effects as it combined a large manufacturer of micro-irrigation equipment with the two largest design service firms in Central California.  That harmed growers that used IDC and AVI by restricting their access to equipment from other manufacturers and harmed manufacturers by restricting their ability to sell to growers that used IDC or AVI. The vertical aspects of the merger also reduced competition by providing Jain access to competitively-sensitive information from other manufacturers that Jain could use to the detriment of both growers and other manufacturers.

83.   The acquisition had anticompetitive horizontal effects as it combined the two largest design service firms in Central California and eliminated competition between IDC and AVI, harming growers where they were competing sellers as well as harming equipment manufacturers where they were competing buyers.

84.   Thus, the acquisition increased prices and reduced quality in the relevant markets for micro-irrigation equipment and design services in Central California.

85.   As a direct and proximate result of the anticompetitive effects of the acquisition, Netafim lost millions of dollars in revenue.

- 24 -

## SECOND CAUSE OF ACTION

### Violation of Clayton Act, Section 7, 15 U.S.C. § 18

86.   Plaintiffs incorporate by reference the allegations in paragraphs 1-78.

87.   Section 7 of the Clayton Act prohibits acquisitions the effect of which "may be substantially to lessen competition."  15 U.S.C. § 18.

88.   The Acquisition substantially lessened competition in the markets for micro-irrigation equipment and design services in Central California.

89.   The acquisition had anticompetitive vertical effects as it combined a large manufacturer of micro-irrigation equipment with the two largest design service firms in Central California.  That harmed growers that used IDC and AVI by restricting their access to equipment from other manufacturers and harmed manufacturers by restricting their ability to sell to growers that used IDC or AVI. The vertical aspects of the merger also reduced competition by providing Jain access to competitively-sensitive information from other manufacturers that Jain could use to the detriment of both growers and other manufacturers.

90.   The acquisition had anticompetitive horizontal effects as it combined the two largest design service firms in Central California and eliminated competition between IDC and AVI, harming growers where they were competing sellers as well as harming equipment manufacturers where they were competing buyers.

91.   Thus, the acquisition increased prices and reduced quality in the relevant markets for micro-irrigation equipment and design services in Central California.

92.   As a direct and proximate result of the anticompetitive effects of the acquisition, Netafim lost millions of dollars in revenue.


## THIRD CAUSE OF ACTION

### Violation of the Lanham Act, 28 U.S.C. § 1125

93.Plaintiffs incorporate by reference the allegations in paragraphs 1-58.

- 25 -

94.   The Lanham Act prohibits "false or misleading description of facts, or false or misleading representation of fact, which… in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities."

95.   Defendants made numerous false or misleading statements about micro-irrigation equipment regarding the usefulness and safety of equipment manufactured with additives, foaming agents, or recycled materials, and regarding Netafim's ability and willingness to fulfill warranty obligations.

96.   These false and misleading statements were made by Defendant Jain and, following the acquisition, by Defendants AVI and IDC.  The statements were made on Jain's website and directly to Netafim's customers.

97.   For the reasons explained in paragraphs 39-53, the statements identified were literally false or, at a minimum, misleading.

98.   Because these claims were literally false, they presumptively had the tendency to deceive a substantial portion of the purchasing public.  In any event, regardless of whether these statements were literally false, they presumptively deceived a substantial portion of the purchasing public because Defendants made them intentionally as part of a concerted effort to mislead potential customers.

99.   As detailed in paragraphs 33 and 41, Netafim received comments from customers that confirmed that Defendants' statements had a tendency to deceive.

100. Defendants' false claims were facially material assertions about the usefulness, reliability, and safety of Netafim's products.  Defendants' claims were intended to and did influence customers' purchasing decisions.

101. Defendants caused their false claims to enter interstate commerce by posting them online and spreading them through their salesforces.

102. As a direct and proximate result of Defendants' false and misleading statements, Netafim was injured in an amount to be proven at trial and Defendants made additional sales in an amount to be proven at trial.

COMPLAINT OF NETAFIM IRRIGATION, INC.

1
2
**PRAYER FOR RELIEF**
3
Wherefore, Plaintiff respectfully requests that this Court:
4
 A. Decree that Defendants violated 15 U.S.C. §§ 1, 18, and 1125.
5
 B. Permanently enjoin Defendants' conduct in violation of 15 U.S.C. §§
6
   1, 18, and 1125 as alleged herein.
7
 C. Order the divestiture of assets, divestiture or reconstruction of
8
   business, and such other relief sufficient to restore the competition that
9
   would have existed absent the acquisition.
10
 D. Award Netafim damages according to proof for injury to its business
11
   resulting from Defendants' anticompetitive practices, which Netafim
12
   believes will exceed $10 million before trebling, and enter a joint and
13
   several judgment in favor of Plaintiff against Defendants.
14
 E. Award Netafim damages according to proof for injury to its business
15
   resulting from Defendants' false and misleading statements, which
16
   Netafim believes will exceed $1 million.
17
 F. Award Netafim the profits earned from Defendants' sale of micro-
18
   irrigation equipment and design services due to their false and
19
   misleading statements according to proof.
20
 G. Award Netafim its costs to counter and remediate Defendants' false
21
   statements according to proof.
22
 H. Award Netafim attorneys' fees and costs.
23
 I. Grant such other and further relief as this Court deems just and proper.
24
25
26
27
28

COMPLAINT OF NETAFIM IRRIGATION, INC.

1    Dated:  March 29, 2021          Respectfully submitted,

2

3                                    By: _____

4                                    KENDALL H. MACVEY
                                     GREGG W. KETTLES
5                                    WENDY Y. WANG
                                     BEST BEST & KRIEGER LLP
6
                                     KENNETH S. REINKER (pro hac vice pending)
7                                    CLEARY GOTTLIEB STEEN & HAMILTON LLP

8
                                     Attorneys for Plaintiff
9                                    NETAFIM IRRIGATION, INC.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 28 -

1

## **JURY TRIAL DEMANDED**

2

Netafim respectfully demands a jury trial on all issues so triable.

3

4     Dated:  March 29, 2021                    Respectfully submitted,

5

6                                               By: _____

7                                               KENDALL H. MACVEY
                                                GREGG W. KETTLES
8                                               WENDY Y. WANG
                                                BEST BEST & KRIEGER LLP

9
                                                KENNETH S. REINKER (pro hac vice pending)
10                                              CLEARY GOTTLIEB STEEN & HAMILTON LLP

11
                                                Attorneys for Plaintiff
12                                              NETAFIM IRRIGATION, INC.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT OF NETAFIM IRRIGATION, INC.